HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES M. KOLLAR,<br><br>    Plaintiff,<br><br>v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>    Defendant. | CASE NO. 3:19-cv-05180-RBL<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD<br><br>DKT. ## 12, 15 |

**INTRODUCTION**

THIS MATTER is before the Court on the parties' Cross-Motions for Summary Judgment and Plaintiff James M. Kollar's Motion to Supplement the Administrative Record. Dkt. ## 12, 15. This is an action under the Employee Retirement Income Security Act (ERISA). Kollar worked for policyholder First Choice Health Network as a software engineer until he was terminated on May 11, 2018. AR 000137. Prior to that, he had been diagnosed with Ankylosing Spondylitis and Hemochromatosis, among other things. AR 000106. According to his physicians, Neil F. Moody and Patricia Papadopoulos, Kollar could perform "daily activities with limitations" but his "spinal motion [was] sharply restricted" and he had issues with sitting

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT AND PLAINTIFF'S MOTION TO
SUPPLEMENT THE ADMINISTRATIVE
RECORD - 1

or standing for very long without changing position. AR 000107. His doctors opined that these restrictions were "indef[inite]" and Kollar was incapable of working on April 5, 2018. *Id*.

Kollar filed a claim for short term disability benefits on June 19, 2018. AR 000112. Defendant Sun Life denied his claim on August 27. AR 000167. Kollar requested that Sun Life review its decision on November 21, AR 000172, but Sun Life re-affirmed its denial on January 28, 2019. AR 000183. Sun Life's decision was based on Kollar's continued fulltime employment until his dismissal, which prevented his benefits from being triggered prior to his termination as an insured. AR AR000183-86.

Kollar has sued challenging Sun Life's denial of benefits. In addition to moving for summary judgment, Kollar also requests that the Court supplement the record with additional documents, including his own declaration. Dkt. # 12. The Court will address each motion in turn.

## DISCUSSION

**1.      Motion to Supplement the Record**

Kollar requests that the Court consider the following documents that are not part of the administrative record: (1) 71 pages of medical records that were sent to Sun Life on December 27, 2018 [Dkt. # 12-3]; (2) a Social Security Administration Notice of Award to Kollar dated December 24, 2018 [Dkt. # 12-4]; and (3) Kollar's own declaration [Dkt. # 12-5]. Sun Life does not object to the first set of documents, which it states were erroneously excluded from the record. However, Sun Life does object to the second and third documents.

When reviewing a plan administrator's denial of benefits under ERISA, a district court may consider evidence outside the administrative record "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision. In most cases, where additional evidence is not necessary for adequate review of the

benefits decision, the district court should only look at the evidence that was before the plan administrator . . . at the time of the determination." *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir.1993) (en banc)). A district court may admit extrinsic evidence in cases involving:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Quesinberry*, 987 F.2d at 1025). However, "a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator." *Mongeluzo*, 46 F.3d at 944.

The Court grants Kollar's request to admit the 71 pages of medical records that were apparently sent to Sun Life. Dkt. # 12-3. With respect to the other documents, Kollar does not argue that they meet any of the criteria identified in *Opeta*. Kollar's social security administration notice of award contains no medical analysis or expertise and therefore does not shed useful light on the issues. As for the declaration, Kollar could have included this information in his personal profile; indeed, some of the information is already in the record. *See* AR 000010. Consequently, the Court will not admit the social security administration notice of award or Kollar's declaration.

**2.     Cross-Motions**

Sun Life argues that it properly denied Kollar benefits for several reasons. First, Kollar's physicians identified April 5, 2018, as the date Kollar became disabled, but Kollar did not stop working fulltime until May 11, the day his insurance expired. Consequently, Sun Life argues that Kollar did not satisfy the policy's "Elimination Period," which requires that a claimant spend 7 days without working or working reduced hours after the onset of disability before receiving benefits. AR 000031. Sun Life also contends that Kollar cannot show that he was receiving "regular and continuing care by a Physician for the disabling condition." AR 000052.

Kollar responds that he became disabled on May 11, not April 5. Because he was fired before his policy terminated at midnight, he satisfied the policy's definition of "Totally Disabled" while he was still covered. Kollar also argues that he was receiving "regular and continuous care" from his doctor that began on September 9, 2016, with his most recent appointment taking place on March 22, 2018, and his next appointment (prior to termination) scheduled for June 19, 2018.

*a.     Standard of Review*

When a plan administrator denies benefits, the decision should be "reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Both parties agree that the *de novo* standard is appropriate because discretionary clauses in disability policies are barred by statute in Washington. *See* WAC 284-96-012.

Under *de novo* review, the court must simply "evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). The court looks at the evidence with fresh eyes and applies no deference to the plan administrator's contractual interpretations or factual findings. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1068 (9th Cir. 1999). However, under Rule 56, courts are not permitted to weigh the evidence or make findings of fact. *See Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir.1997). Consequently, when the parties seek a judgment under the *de novo* standard in an ERISA case, numerous courts have determined that Rule 52 proper procedural vehicle. *See, e.g., Bunger v. Unum Life Ins. Co. of Am.*, 196 F. Supp. 3d 1175, 1178 (W.D. Wash. 2016) (converting cross-motions under Rule 56 into motions under Rule 52; *Leight v. Union Sec. Ins. Co.*, 189 F. Supp. 3d 1039, 1047-48 (D. Or. 2016) (same); *Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d 1311, 1314 (D. Or. 2012) (same); *Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027, 1032 n.2 (N.D. Cal. 2011) ("*De novo* review on ERISA benefits claims is typically conducted as a bench trial under Rule 52.").

Here, although the parties both refer to their briefs as motions for summary judgment, they dispute the material fact of when, exactly, Kollar became unable to work. The Court will therefore consider the motions under Rule 52 to determined "whether [Kollar] is disabled within the terms of the policy." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (distinguishing the Rule 52 standard from summary judgment in the ERISA context).[1]

---

[1] The Court notes that considering the Motions under Rule 52 does not affect the Court's decision not to supplement the administrative record. *See Kearney*, 175 F.3d at 1095 ("The district judge will retain discretion to decide, subject to *Mongeluzo*, whether, in order to answer this different question [under Rule 52], he should take additional evidence.").

*b.     Findings of Fact and Conclusions of Law*

Under Sun Life's policy, a claimant qualifies for benefits if they: "(1) satisfy the Elimination Period with the required days of Total or Partial Disability; and (2) provide proof of continued Total or Partial Disability; and (3) have regular and continuing care by a Physician for the disabling condition; and (4) not be engaged in any occupation or employment for wage or profit other than Partial Disability employment with the Employer." AR 000052.

The policy also contains the following definitions. "**Totally Disabled** means the Employee, because of Injury or Sickness, [1] is unable to perform all of the material and substantial duties of his own occupation and [2] is not engaged in any occupation for wage or profit." *Id*. "**Sickness** means illness, disease or pregnancy." AR 000027. "**Elimination Period** means a period of continuous days of Total or Partial Disability for which no STD Benefit is payable." AR 000031. The policy sets the Elimination Period at 7 days. AR 000023.

The policy provides that "[a]n employee will cease to be insured on . . . the date employment terminates." AR 000067. However, "insurance will be continued for an employee absent due to a disability during . . . the Elimination Period." *Id*. In Sun Life's opinion reviewing the denial of benefits, Sun Life stated that Kollar's STD coverage did not terminate until 11:59:59 on the day of his termination. AR 000185. Sun Life acknowledged that it was "possible" that Kollar would qualify for benefits "if proof of Total Disability was provided following [Kollar's] work shift and before 11:59:59." *Id*.

Consequently, this case comes down to one question: did Kollar satisfy the policy's definition of "Totally Disabled" before his insurance terminated on May 11, 2018, at 11:59:59?[2]

---

[2] The policy's definition of "Partially Disabled" is not applicable. "**Partially Disabled** means the Employee, because of Injury or Sickness, is unable to perform all of the material and substantial duties of his own occupation on a full-time basis, but he is: (1) performing at least one of the material and substantial duties of his own occupation or another occupation on a part-time or full-time basis; and (2) earning less than 80% of his Total

The Court concludes that he did not. While Kollar satisfied the second element of the definition ("not engaged in any occupation for wage or profit") after he was dismissed from work on May 11, he never satisfied the first element ("unable to perform all of the material and substantial duties of his own occupation").

According to the physician statement in Kollar's claim packet, Kollar became completely unable to work on April 5, 2018, due to his "sharply restricted" spinal motion and difficulty sitting for long periods without changing position. AR 000107. This form was signed by Dr. Moody on June 12 and Dr. Papadopoulos on June 18. *Id*. However, the rest of the evidence simply does not bear out this conclusion. First, the only medical document demonstrating Kollar's condition prior to termination is Moody's notes from Kollar's 30-minute office visit on March 22, 2018. Dkt. # 12-3 at 5. Moody writes that Kollar is "doing better from a pain standpoint on duloxetine" and rates his pain level at 3/10. *Id*. at 6. With respect to his Ankylosing Spondylitis, Moody states that Kollar is "stable overall on adalimumab, but some right knee pain." *Id*. at 14. While Kollar was clearly experiencing some pain and limited motion in late March, this does not support a determination that he became unable to work on April 5 (in fact, the April 5 date seems arbitrary and unsupported by any medical documentation). Indeed, Kollar was apparently feeling *better* at his March office visit, making it difficult to see how that visit could have led his physicians to conclude he was unable to work a few weeks later.

Second, Kollar continued working fulltime until he was terminated on May 11. This is not, as Sun Life argues, dispositive proof that Kollar was able to perform his duties at work. The policy does not require that a claimant lose the ability to work and actually cease working

---

Weekly Earnings due to the same Injury or Sickness that caused Total or Partial Disability." AR 000031. Kollar never earned a reduced salary and therefore would not have qualified as "Partially Disabled."

simultaneously—it is possible that an employee may keep *trying* to work and draw salary for as long as possible despite being physically unable to fulfill their duties. However, in Kollar's case, his uninterrupted work schedule is further evidence that he was not incapable of doing his job. Kollar worked 8-hour days through May 11, when he was terminated. AR 000137. The employer's statement does not say that Kollar's termination was related to his physical limitations or inability to perform his duties. *Id*.

In light of this evidence, the Court finds that Kollar did not become "unable to perform all of the material and substantial duties of his own occupation" on April 5 and therefore did not satisfy the definition of "Totally Disabled" before his insurance terminated on May 11. The Court GRANTS Sun Life's Motion and DENIES Kollar's Motion.

IT IS SO ORDERED.

Dated this 16th day of December, 2019.

/s/ Ronald B. Leighton
Ronald B. Leighton
United States District Judge